# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBERTO MORALES,**

    **Plaintiff,**

v.                                  Case No:    6:18-cv-1652-Orl-31TBS

**BIMBO FOODS BAKERIES DISTRIBUTION, LLC,**

    **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 7) filed by the Defendant, Bimbo Foods Bakeries Distribution, LLC (henceforth, "Bimbo Foods"), the response in opposition (Doc. 10) filed by the Plaintiff, Roberto Morales ("Morales"), and the reply (Doc. 16) filed by Bimbo Foods.

    **I.**    **Background**

According to the allegations of the Complaint (Doc. 2), which are accepted in pertinent part as true for purposes of resolving the instant motion, Morales owns and operates a bread delivery route pursuant to a distribution agreement (the "Agreement") with Bimbo Foods. (Doc. 2 at 2). The Agreement provides that Morales has the sole right to sell and distribute bakery products within a defined "Sales Area." (Doc. 2 at 2). In February 2013, a new Walmart store – known as "Walmart #5781" – opened within Morales' Sales Area. (Doc. 2 at 4). However, Walmart #5781 was not assigned to Morales by Bimbo Foods. (Doc. 2 at 5). Instead, Bimbo Foods told him the new store was outside of his Sales Area and assigned it to a different distributor. (Doc. 2 at 5). In September of 2014, Bimbo Foods pressured Morales into signing a

new "Schedule A" to the Agreement, titled "Schedule A-2," which altered the boundaries of his Sales Area and excluded Walmart #5781 from it. (Doc. 2 at 6-8). The next month, Bimbo Foods pressured Morales into signing an amendment (the "Amendment"), which altered the Agreement to incorporate Schedule A-2. (Doc. 2 at 7-8). Morales did not receive any consideration for signing either Schedule A-2 or the Amendment. (Doc. 2 at 8).

On September 12, 2018, Morales filed a seven-count complaint in state court. On October 3, 2018, Bimbo Foods removed the case to this court. In Count I, Morales seeks a declaratory judgment that, *inter alia*, Bimbo Foods breached the Agreement by failing to assign Walmart #5781 to him and that Schedule A-2 and the Amendment are unenforceable. In Count II, Morales seeks injunctive relief to be assigned the Walmart store at issue. Morales seeks rescission of Schedule A-2 and the Amendment in Count III. Count IV is a breach of contract claim. Count V is a claim for breach of the covenant of good faith and fair dealing. In Count VI, Morales asserts a claim for breach of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* And in Count VII, he asserts a claim for misappropriation of his Sales Area.

**II.    Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most

favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.     Analysis

In his response to the instant motion, Morales agreed to voluntarily dismiss Count II and Count V. The remaining five counts are discussed below.

### A. Count I – Declaratory Judgment

The federal[1] Declaratory Judgment Act, 28 U.S.C. § 2201(a), vests district courts with broad discretion over whether to exercise jurisdiction over requests for declaratory relief. *See, e.g.*, *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (stating that Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."). Bimbo Foods argues that the declaratory relief sought in Count I is duplicative of the relief sought by Morales in his breach of contract, rescission, and injunctive relief counts. Specifically, Bimbo Foods notes that in Count I Morales seeks a declaration that Bimbo Foods breached the Agreement, that Schedule A-2 and the Amendment are unenforceable, that he should immediately be awarded Walmart #5871, and that he should be awarded compensatory damages and attorneys' fees. (Doc. 2 at 11-12). Morales disputes this, contending that the relief sought in Count I is not duplicative of that sought in his injunction, rescission, and breach claims, but is in fact distinct and different. (Doc. 10 at 3-4). However, Morales is unable to identify any examples of such distinctions, and the Court's review has not uncovered any. The Court therefore declines to exercise jurisdiction over Count I, which will be dismissed.

### B. Count III – Rescission of Schedule A-2 and the Amendment

By its terms, the Agreement is governed by Pennsylvania law. (Doc. 2-1 at 17). Bimbo Foods seeks dismissal of Count III on the grounds that Morales has failed to plead an adequate basis for rescission of a contract under Pennsylvania law. (Doc. 7 at 4-6). However, Pennsylvania permits rescission of an executed contract in cases involving "fraud, mistake, failure

---

[1] Declaratory judgment actions that are removed to federal court are treated as though they had been filed under the federal Declaratory Judgment Act. *See Krauser v. BioHorizons, Inc.*, 903 F.Supp.2d 1337, 1346 n.6 (S.D. Fla. 2012) (citing cases).

of consideration, and quia timet." *Umbelina v. Adams*, 34 A.3d 151, 158-59 (Pa. Super. Ct. 2011) (citing cases). Morales complains repeatedly about a failure of consideration in connection with his signing of Schedule A-2 and the Amendment.[2] Accordingly, Count III will not be dismissed.

### C. Count IV – Breach of Contract

The parties agree that this claim is subject to Pennsylvania's four-year statute of limitations for an action founded upon a contract. Bimbo Foods argues that Count IV must be dismissed because the alleged breach occurred in February 2013, while this suit was filed in September 2018, more than five years later. Morales responds that under Pennsylvania law, the Agreement is considered to be a "continuous" contract, and therefore the statute of limitations will not begin to run until the contract is ended:

> If services are rendered under an agreement which does not fix any certain time for payment or for the termination of the services, the contract will be treated as continuous, and the statute of limitations does not begin to run until the termination of the contractual relationship between the parties.

*Thorpe v. Schoenbrun,* 195 A.2d 870, 872 (Pa. Super. Ct. 1963) (quotation omitted).

The concept of a continuing contract often arises in the context of professional service contracts. *GAI Consultants, Inc. v. Homestead Borough*, 120 A.3d 417, 424 (Pa. Commw. Ct. 2015). For example, *Thorpe* involved a "continuing contract of interrelated services" performed by an ophthalmologist to treat his patient's glaucoma and preserve her eyesight. *Id.* at 424-25. The *Thorpe* court found that the physician's claim for non-payment for services rendered did not

---

[2] As but one example, within Count III itself, Morales asserts that he "received no valuable consideration from [Bimbo Foods] in exchange for signing the new Schedule A-2 of the Amendment and thereby excluding the new Walmart store #5781 as an Outlet in Morales' Sales Area." (Doc. 2 at 15).

- 5 -

accrue until the doctor-patient relationship was terminated, rather than when the services at issue had been performed. *Thorpe*, 195 A.2d at 379-80.

The Agreement, however, is not the sort of arrangement that was at issue in *Thorpe* or that might otherwise be considered "continuous" for limitations purposes. As Bimbo Foods points out, Pennsylvania courts have construed distribution agreements such as the one at issue here as contracts for the sale of goods – and therefore governed by Pennsylvania's Uniform Commercial Code – rather than service contracts, in that their "dominant purpose" is the sale of goods rather than the provision of services. *See, e.g.*, *LightStyles, Ltd. ex rel. Haller v. Marvin Lumber and Cedar Co.*, 2015 WL 4078807, at *1, *4 n.1 (M.D. Pa. July 6, 2015) (in case involving breach claim by former exclusive distributor against manufacturer, noting that parties agreed that Article II of Pennsylvania's UCC applied, making it unnecessary for the court to decide whether dominant purpose of distribution agreement was sale of goods or provision of services).

The question of whether a contract is a "continuing" one hinges on whether it fixes a certain time for payment or termination of services. *Thorpe* at 872. In this case, the Agreement required that Morales pay Bimbo Foods by Friday for all of their products he had received in the preceding week. (Doc. 2-1 at 4-5). Thus, it was not a continuing contract.

To further underscore the distinction between the Agreement and the contract at issue in *Thorpe*, the Agreement provides that any of the services it requires can be performed by "such persons as [Morales] deems appropriate," rather than requiring performance by Morales himself. (Doc. 2-1 at 7). Personal service contracts generally do not permit substituted performance. *See Restatement (Second) of Contracts* § 318 cmt. c. (Am. Law Inst. 1981) (noting that while delegation of performance is permissible in many types of contracts, "[t]he principal exceptions

relate to contracts for personal services and to contracts for the exercise of personal skill or discretion.").

Because the contract was not a continuous one, Morales' claim for breach accrued in 2013, when he was not awarded the new Walmart. His breach of contract claim therefore falls outside the statute of limitations, and this count will be dismissed.

### D. Count VI – FDUTPA

To state a claim for damages under FDUTPA, a plaintiff must allege 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *City First Mortgage Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008). In this case, any damage suffered by Morales occurred when Bimbo Foods breached the contract and failed to award him the new store; Morales does not plead that this was caused by any deceptive act or unfair practice. Moreover, Morales does not allege that he suffered any actual damages as a result of the failure to award him the store. What he seeks are consequential damages – the additional profits he would have earned if he had been assigned Walmart #5781 and the additional resale value of his Sales Area if it included that store. (Doc. 2 at 19). FDUTPA does not allow for the recovery of consequential damages. *See, e.g., Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824-25 (Fla. 4th DCA 2010). Morales has therefore failed to state an FDUTPA claim, and this count will be dismissed.

### E. Count VII – Misappropriation of Sales Area and Distribution Rights

Under Florida law, a claim for misappropriation is subject to a four-year statute of limitations. Fla. Stat. § 95.11. The parties make the same arguments in regard to this count as they did in respect to the breach of contract count. Accordingly, the same result applies. This count will be dismissed.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 7) filed by the Defendant, Bimbo Foods Bakeries Distribution, LLC, is **GRANTED IN PART AND DENIED IN PART**. Counts I, IV, and VII are **DISMISSED WITH PREJUDICE**. Count VI is **DISMISSED WITHOUT PREJUDICE**. With Counts II and V having been voluntarily dismissed, the only surviving claim is the rescission claim in Count III. Should the Plaintiff wish to file an amended complaint, he must do so on or before February 8, 2015.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 29, 2019.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**